UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
NICOLE JONES,

                Plaintiff,                        **MEMORANDUM & ORDER**
                                                           15-CV-4672 (MKB)

                v.

TARGET CORPORATION,

                Defendant.

-----------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

      Plaintiff Nicole Jones, proceeding *pro se*, commenced the above-captioned action against Defendant Target Corporation, alleging gender, sex, age and disability discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Americans with Disabilities Act of 1990, 29 U.S.C. § 621 *et seq.* ("ADA"). Plaintiff's request to proceed *in forma pauperis* is granted. For the reasons discussed below, the Court dismisses the Complaint and grants Plaintiff thirty (30) days from the date of this Order to file an amended complaint.

**I. Background**

      The following allegations are accepted as true for purposes of this motion. Plaintiff is a forty-five or forty-six year-old woman,[1] who, at some unspecified time, worked for Target Corporation. (Compl. 3–4.) While working for Defendant, Plaintiff took a medical leave of absence and, when she returned to work, Defendant allegedly began discriminating against her.

---

[1] Plaintiff alleges that she was born in 1969, but does not specify a date. (Compl. 3.)

(*Id.* at 3.) Plaintiff alleges that upon her return from leave, Defendant's employees began "routinely play[ing] derogatory music," telling Plaintiff that she was "slow," and following her around the store "timing [her]." (*Id.*)

On or about November 21, 2013, Plaintiff's supervisor posted a photograph to his Facebook page, showing the supervisor holding a pair of men's underwear and describing them as "gay." (*Id.* at 4.) At some unknown time, the same supervisor told Plaintiff that "he was going to run [Plaintiff] out of Target." (*Id.*) Thereafter, Plaintiff complained to a human resources ("HR") representative apparently about her supervisor's comment to her.[2] (*Id.*) At some point thereafter, the HR representative informed Plaintiff that according to Plaintiff's co-worker, Plaintiff stated at some unknown time, "J'amonte [her supervisor] put his [genitals] in my hands."[3] (*Id.*) Sometime thereafter, Plaintiff was fired. (*Id.* at 3.)

In or about February of 2014, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") regarding Defendant's discriminatory conduct. (*Id.* at 4.) On May 14, 2015, the EEOC dismissed Plaintiff's charge after an investigation, and issued Plaintiff a right to sue letter. (*Id.* at 6.) On August 7, 2015, Plaintiff commenced this action. (*Id.* at 1.)

## II. Discussion

### a. Standards of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its

---

[2] The Complaint does not specify what Plaintiff spoke to the HR representative about, but the allegation follows Plaintiff's allegations regarding her supervisor's comment. (Compl. 4.)

[3] The Complaint does not specify the timing of when the HR representative informed Plaintiff of this allegation and whether it was at the time she complained about her supervisor or at some later time. (Compl. 4.)

2

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (same); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

Analyzing whether a plaintiff has sufficiently alleged an employment discrimination claim requires reference not only to the pleading standard discussed above, but also to the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)) (discussing burden-shifting); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981)). Under that framework, a plaintiff must first establish a prima facie case of discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 506; *see also Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 (2d Cir.

2013); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). A plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 506). If a plaintiff meets her burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 307, 311). If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that the defendant-employer's reason was merely pretext. *Id.* at 83.

At the pleading stage, however, a plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas* prima facie case, but the facts alleged must give "plausible support to the reduced requirements" of the prima facie case. *Littlejohn*, 795 F.3d at 311; *see Dawson v. N.Y.C. Transit Auth.*, --- F. App'x ---, ---, 2015 WL 5438790, at *1–2 (2d Cir. Sept. 16, 2015); *Vega*, 801 F.3d at 84; *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))). Thus, a plaintiff need only plead facts sufficient to give "plausible support" to plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312).

  b. **Discrimination claims**

    i. **Title VII**

A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national

4

origin was a motivating factor in the employment decision," which can be shown "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 86–87. In other words, "absent direct evidence of discrimination," to survive a motion to dismiss a claim of employment discrimination in violation of Title VII, a plaintiff must plausibly allege facts that would support a finding that she suffered an adverse employment action and "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *Dechberry v. N.Y.C. Fire Dep't*, No. 14-CV-2130, 2015 WL 4878460, at *14 (E.D.N.Y. Aug. 14, 2015).

### 1. Protected group

Plaintiff has sufficiently alleged that, as a woman, she is a member of a protected group under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting employment discrimination on the basis of gender).

### 2. Adverse employment action

An "adverse employment action" means "a materially adverse change in the terms and conditions of employment" and includes, among other things, termination, demotion or a failure to promote. *See Robinson v. Dibble*, 613 F. App'x 9, 12 (2d Cir. 2015) (noting that plaintiff's termination constituted "adverse employment action"); *Levitant v. City of N.Y. Human Res. Admin.*, 558 F. App'x 26, 29 (2d Cir. 2014) ("It is well-established that a failure to promote is an adverse employment action." (citing *Tregelia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002))); *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (An adverse employment action includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished

5

material responsibilities, or other indices unique to a particular situation." (internal quotation marks and citations omitted)). Here, Plaintiff has sufficiently alleged an adverse employment action based on her termination and denial of a promotion.[4] (Compl. 3); *see Robinson*, 613 F. App'x at 12; *Levitant*, 558 F. App'x at 29.

### 3. Inference of discrimination

In the absence of direct evidence of the decisionmakers's discriminatory intent, courts focus on whether a plaintiff's allegations support a "plausible inference of discrimination." *See Vega*, 801 F.3d at 87. Whether facts give rise to a plausible inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Remarks made by coworkers may also be probative of discriminatory intent, depending on the particular circumstances under which the comments were made. *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (outlining four factors district courts in

---

[4] These allegations are set forth in response to a section of the form Complaint that prompts claimants to indicate the nature of the discriminatory conduct of which they complain by checking off applicable items on a list. (Compl. 3.) In completing this section, Plaintiff checked "[t]ermination of my employment," "[f]ailure to promote," "[f]ailure to accommodate my disability, "[r]etaliation" and, in the "[o]ther acts" field, Plaintiff wrote "character assassination." (*Id.*) Construing the Complaint liberally, Plaintiff appears to allege that these acts were related to both her discrimination and retaliation claims.

this circuit routinely consider in evaluating the probative value of such remarks, including (1) the identity and position of the individual making the remark, (2) the timing of the remark in relation to the employment decision, (3) the content of the remark, and (4) the context in which it was made); *Mesias v. Cravath, Swaine & Moore LLP*, --- F. Supp. 3d ---, ---, 2015 WL 2069419, at *6 (S.D.N.Y. May 4, 2015) ("Remarks may raise an inference of discrimination if there is a nexus between the remarks and an adverse employment decision." (citing *Zhang v. Barr Labs., Inc.*, No. 98-CV-5717, 2000 WL 565185, at *4 (S.D.N.Y. May 8, 2000))).

Here, Plaintiff alleges that she was subject to the playing of derogatory music, comments that she was "slow" and being told by a co-worker that she would be "run out" of Target. (Compl. 3–4.) However, Plaintiff adds no other details regarding the derogatory music, the nature of the comments about her speed or that any of these alleged comments and acts were because of her gender. As a result, Plaintiff's allegations fail to support a plausible inference of discrimination and she has not plausibly alleged that her gender was a motivating factor in her termination. *See Khaleel v. Swissport USA, Inc.*, No. 15-CV-4880, 2015 WL 5307733, at *2 (E.D.N.Y. Sept. 10, 2015) (dismissing discrimination claim pursuant to Title VII because "[e]ven under the most liberal interpretation of [plaintiff's] complaint, he provides no facts that could possibly connect or link any adverse employment action to a protected status"); *Haynes v. Capital One Bank*, No. 14-CV-6551, 2015 WL 2213726, at *2 (E.D.N.Y. May 8, 2015) (dismissing plaintiff's discrimination claim pursuant to Title VII because, aside from alleging single "ambiguous remark made by [plaintiff's] branch manager, in which [the manager] stated that 'this is why I don't hire her kind,'" plaintiff failed to allege "facts that suggest her termination or any other adverse employment actions were connected to her race").

Accordingly, Plaintiff's discrimination pursuant to Title VII is dismissed without

7

prejudice. Should Plaintiff wish to pursue this claim, she must file an amended complaint setting forth facts sufficient to support a plausible inference that gender was a motivating factor in her termination or other adverse employment action.

    ii.    **ADEA claims**

Courts analyzing claims of employment discrimination under the ADEA apply the three-step *McDonnell Douglas* burden-shifting framework. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (applying *McDonnell Douglas* framework to ADEA age discrimination claim). To establish a prima facie case of age discrimination under the ADEA, a plaintiff must demonstrate: "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 107. To state a claim pursuant to the ADEA a plaintiff must also allege that age was the "but for" cause of the employer's adverse action, and not merely that it was a motivating factor. *See Vega*, 801 F.3d at 86 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)) (noting that a plaintiff alleging age discrimination must allege that age was the but-for cause of the adverse action).

As with Title VII discrimination claims, while a plaintiff need not specifically plead each and every element of a prima facie case of discrimination to survive a motion to dismiss, the standard provides a framework for analyzing whether the plaintiff's claims for relief are plausible. *Dechberry*, 2015 WL 4878460, at *16. At the pleading stage, a plaintiff must plausibly allege that (1) her employer took an adverse employment action against her and (2) her age "was the 'but-for' cause of the employer's adverse action." *See Vega*, 801 F.3d at 86; *see also Ingrassia v. Health & Hosp. Corp.*, No. 14-CV-1900, 2015 WL 5229444, at *6 (E.D.N.Y.

8

Sept. 8, 2015) ("*Vega* . . . require[s] a plaintiff alleging an ADEA violation to plausibly allege that the employer took adverse action against her and that age was the 'but for' cause in the employment decision.").

### 1. Protected age group

Here, Plaintiff alleges that she is forty-five or forty-six years old. (Compl. 3.) However, Plaintiff fails to allege when she worked for Defendant or when she was terminated. Assuming she worked for, and was fired by, Defendant within the last six years, Plaintiff would be within the protected age group under the ADEA at the time of the alleged discrimination. *See* 29 U.S.C. § 631(a).

### 2. Adverse employment action

Plaintiff alleges that, among other things, she was terminated and denied a promotion. (Compl. 3.) These allegations, although not specific as to the timing of these events, sufficiently allege that Plaintiff suffered an adverse employment action. Like Title VII, the ADEA precludes employers from discharging employees, denying promotions or setting compensation on the basis of age. *See* 29 U.S.C. § 623(a) (providing that "[i]t shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, . . . because of such individual's age"). As Plaintiff's age discrimination claim appears premised on her termination and denial of a promotion, she has sufficiently alleged an adverse employment action.

### 3. Inference of discrimination

Plaintiff has failed to allege facts giving rise to a plausible inference of age discrimination. Liberally construing Plaintiff's complaint, while she alleges that her employees played derogatory music for her, told her that she was "slow" and apparently followed and timed

9

her on the job, these vague allegations do not state a connection to her age. (*See* Compl. 3.) These allegations fail to raise a plausible inference that Plaintiff was terminated because of her age. *See Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 180 (E.D.N.Y. 2014) (holding plaintiff failed to allege sufficient facts to support conclusion that, but for her age, she would have been hired for tenure track position with school district, and noting that complaint failed to allege any details about the identity or ages of the individuals school district hired instead of plaintiff); *McManamon v. Shinseki*, No. 11-CV-7610, 2013 WL 3466863, at *7 (E.D.N.Y. Mar. 28, 2013) (dismissing plaintiff's ADEA discrimination claim because amended complaint alleged no facts to support a causal connection between defendant's rejection of plaintiff's application for information technology specialist position and plaintiff's age).

Plaintiff's discrimination claim pursuant to the ADEA is therefore dismissed without prejudice. Should Plaintiff wish to pursue this claim, she is directed to file an amended complaint that sets forth facts sufficient to support a plausible inference that her age was the but-for cause of Defendant's decision to terminate her employment or as to the amounts of her bonus or salary.

### iii. ADA

Liberally construing the Complaint, Plaintiff appears to raise both a discrimination and failure to accommodate claim pursuant to the ADA. (Compl. 3.) As discussed below, Plaintiff has failed to allege sufficient facts to plausibly state either claim.

Under the ADA, covered employers may not "discriminate against a qualified individual on the basis of disability" with regard to employment decisions. *See* 42 U.S.C. § 12112. Under the *McDonnell Douglas* burden-shifting framework, to establish a prima facie case of discrimination under the ADA, a plaintiff must allege that "(1) the defendant is covered by the

ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010) (citations omitted); *see also Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 48–49 (2d Cir. 2014) (quoting *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013)) (outlining prima facie test under the ADA).

As with Title VII discrimination claims, while a plaintiff need not specifically plead each and every element of a prima facie case of discrimination to survive a motion to dismiss, the standard provides a framework for analyzing whether the plaintiff's claims for relief are plausible. *Dechberry*, 2015 WL 4878460, at *16. At the pleading stage, to state a claim of employment discrimination under the ADA, a plaintiff must plausibly allege that (1) her employer took an adverse action against her and (2) the action was taken *because of* her disability or perceived disability. *See Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) ("To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia, that she 'suffered [an] adverse employment action because of [her] disability.'" (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001))).

### 1. Adverse employment action

Plaintiff has sufficiently alleged that she suffered an adverse employment action based on her termination or denial of a promotion. (Compl. 3.) Like Title VII and the ADEA, the ADA precludes employers from discharging employees or setting their compensation on the basis of their disability or perceived disability. *See* 42 U.S.C. § 12112(a) (stating that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . .

the . . . discharge of employees, [or] employee compensation").

### 2. Disability

Although Plaintiff alleges adverse employment actions, her ADA discrimination claim fails because she does not sufficiently allege that she is disabled. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life activities include standing, lifting, bending, speaking and working. *Id.* § 12102(2)(A). Under the EEOC's regulations, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA' and 'is not meant to be a demanding standard.'" *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i)). As a result, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Even absent an actual or recorded disability, an employee is still disabled if the employee is "regarded as having" an impairment. 42 U.S.C. § 12102. An employee may be "regarded as having" an impairment if she establishes that she "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102; *see also Hilton*, 673 F.3d at 129 (stating that employee need not "present evidence of how or to what degree [the employer] believed [a perceived] impairment affected him"). This inquiry "'turns on the employer's perception of the employee' and is therefore 'a question of intent, not whether the employee has a disability.'" *Simmons v. N.Y.C. Transit Auth.*, 340 F. App'x 24, 27 (2d Cir.

2009) (quoting *Francis v. City of Meriden*, 129 F.3d 281, 284 (2d Cir. 1997)). However, "the 'regarded as' definition of disability does not apply to impairments that are both 'transitory and minor,'" *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 606 (E.D.N.Y. 2013) (quoting 42 U.S.C. § 12102(3)(B)), which the statute defines as impairments with "an actual or expected duration of 6 months or less," 42 U.S.C. § 12102(3)(B).

Here, the Complaint is devoid of allegations regarding Plaintiff's disability but suggests that she suffered from some medical condition. Plaintiff states that from "August of the year [she] came back from [] medical leave," she was subject to discrimination. (Compl. 5.) While this statement references some prior medical issue, it falls short of plausibly alleging that Plaintiff was disabled or regarded as having a disability. Additionally, while the allegation that Plaintiff was timed by her co-workers and told she performed slowly could support a conclusion that these people regarded her as having a disability, these allegations lack any context and appear unconnected to any disability. Accordingly, Plaintiff's ADA claim is dismissed without prejudice.

    c. **Failure to accommodate claim**

Liberally construed, the Complaint also claims that Defendant failed to accommodate Plaintiff's disability. (*See* Compl. 3.) To establish a prima facie case of failure to accommodate a disability, a plaintiff must show that, among other things, she is a person with a disability under the meaning of the ADA. *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 9697 (2d Cir. 2009); *see also Ugactz v. United Parcel Serv. Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *7 (E.D.N.Y. Mar. 26, 2013) (detailing requirements for a failure to accommodate claim). As discussed above, Plaintiff has failed to adequately allege that she is disabled under the ADA. Accordingly, her failure to accommodate is dismissed without prejudice.

### d. Retaliation claims — Title VII, ADA, ADEA

Plaintiff alleges that she complained to her supervisor about a male co-worker stating that he "was going to run [Plaintiff] out of Target," and at some unspecified point thereafter, she was terminated.[5] (Compl. 4.) Liberally construed, Plaintiff appears to assert retaliation claims pursuant to Title VII, the ADEA or the ADA.

All three statutes contain similar anti-retaliation provisions. *See* 42 U.S.C. § 2000e-(3)(a) (providing that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice" under Title VII); 29 U.S.C. § 623(d) (providing that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful" under the ADEA); 42 U.S.C. § 12203(a) (providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful" under the ADA). Retaliation claims pursuant to all three statutes are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Littlejohn*, 795 F.3d at 315 (Title VII); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167–68 (2d Cir. 2014) (ADEA); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (ADA). To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings

---

[5] Plaintiff alleges that the same male co-worker described a piece of clothing as "gay," but it is unclear whether Plaintiff also informed her supervisor of this statement. (Compl. 4.)

stage the allegations need only give "plausible support to the reduced prima facie requirements . . . ." *Id.* "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. To sufficiently allege that a defendant-employer took an adverse employment action "because" a plaintiff opposed an unlawful employment practice, a plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* In the retaliation context, but-for causation does not require that retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (quoting *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

### i. Protected activity

Filing either a formal or informal complaint challenging discrimination is considered a protected activity for purposes of retaliation claims under Title VII, the ADEA and the ADA. *See Jagmohan v. Long Island R. Co.*, --- F. App'x ---, ---, 2015 WL 7873399, at *2 (2d Cir. Dec. 4, 2015); *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013). "A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected characteristic and (2) that belief is reasonable. *Jagmohan*, --- F. App'x at ---, 2015 WL 7873399, at *2 (citing *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)); *Summa*, 708 F.3d at 126 (holding that Title VII "protects employees [who] . . . make[ ] informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law"

15

(alteration in original) (quoting *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001))); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 242 (2d Cir. 2007) (vacating dismissal of retaliation claims under ADEA where plaintiff alleged she complained to employer about disparate treatment on basis of age and requested that her union file grievance on her behalf and that employer took adverse action in retaliation); *Treglia*, 313 F.3d at 717, 720 (finding that plaintiff's complaints to his superior opposing disparate treatment due to plaintiff's disability were protected activities for purposes of retaliation claim under ADA).

Here, while Plaintiff alleges that she complained to her HR representative about her supervisor threatening to "run [her] out of Target," it is not clear that Plaintiff had a good-faith and reasonable belief that she was challenging an act or practice prohibited by Title VII, the ADEA or the ADA. Plaintiff provides almost no detail regarding her communication with the HR representative and her HR complaint, on its face, is unconnected to her age or disability. In addition, while there is some suggestion that Plaintiff experienced harassing conduct, the Complaint fails to allege that she was complaining of this harassment when she made her HR complaint. Specifically, Plaintiff does allege that her supervisor made offensive comments on his Facebook page, and at some unspecified point thereafter, the HR representative confronted Plaintiff with a sexually-explicit comment Plaintiff allegedly made about her supervisor. (Compl. 4.) Liberally construing Plaintiff's allegations, the Court finds that Plaintiff fails to connect those allegations to her HR complaint. As a result, Plaintiff has failed to allege any facts from which it can be inferred that Plaintiff engaged in a protected activity. *See Haynes*, 2015 WL 2213726 at *2 (dismissing plaintiff's retaliation claim pursuant to Title VII because, although the plaintiff alleged that she complained to the defendant's human resources department, the complaint contained no description of what she told human resources and

therefore failed to allege that she complained of conduct prohibited by Title VII).

### ii. Adverse action

In the retaliation context, an adverse employment action is one which a reasonable employee would find materially adverse, meaning it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (same).[6] In evaluating whether an action is materially adverse, "'[c]ontext matters,' as some actions may take on more or less significance depending on the context." *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 568 (2d Cir. 2011); *see also Hicks*, 593 F.3d at 165 (noting that even minor acts that would be immaterial in some situations may be material in others).

Plaintiff sufficiently alleges that she suffered an adverse employment action. Plaintiff was terminated, and termination is an adverse action for purposes of retaliation claims pursuant to Title VII, the ADEA and the ADA. *Patrolmen's Benevolent Ass'n of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002) (noting that termination constitutes adverse employment action for purposes of Title VII); *Hernandez v. Int'l Shoppes, LLC*, No. 13-CV-6615, 2015 WL 1858997, at *26, 31 (E.D.N.Y. Apr. 23, 2015) (noting that termination constitutes adverse employment action for purposes of retaliation claims pursuant to ADA); *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2014 WL 1259616, at *7, 12 (S.D.N.Y. Mar. 24, 2014) (noting that termination constitutes adverse employment action for purposes of retaliation claims pursuant to ADEA).

---

[6] The scope of actions that may be materially adverse is broader for purposes of retaliation claims than for discrimination claims. *See Hicks*, 593 F.3d at 165 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

### iii. Causal connection

A causal connection in retaliation claims may be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *see also Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) and *Gorzynski*, 596 F.3d at 110)); *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) ("Ordinarily, causation may be inferred from close temporal proximity."). There is no bright line rule concerning the temporal proximity required to support a causal inference. *See Gorzynski*, 596 F.3d at 110–11 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship."); *Smith v. Town of Hempstead Dept. of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 457 (E.D.N.Y. 2011) ("With regard to the establishment of a prima facie case through temporal proximity, the Second Circuit has not drawn a bright line as to how closely an adverse employment action must follow protected activity to imply that retaliation has taken place." (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009))).

Plaintiff alleges that she complained about a co-worker's statements and then, at some unknown time later, she was terminated. Plaintiff's allegations fail to allege a causal connection between her complaint and any adverse actions she suffered. The Complaint fails to identify any

facts regarding when the alleged events and adverse actions occured.  Accordingly, even if Plaintiff had alleged a protected activity, because she has not alleged a causal connection, her claims fail.

Plaintiff's retaliation claims are therefore dismissed without prejudice.  Should Plaintiff wish to pursue retaliation claims under Title VII, the ADEA or the ADA, she should file an amended complaint that alleges facts as to the substance of the complaint or grievance she filed, who Plaintiff filed the complaint with, and the dates and details of all relevant events as well as any facts that plausibly support the inference that Plaintiff was subjected to adverse employment actions in retaliation for having engaged in protected activity.

### e. Hostile work environment

Plaintiff appears to allege that on multiple occasions she was subject to derogatory music, comments and conduct.  (Compl. 3–4.)  In light of Plaintiff's *pro se* status, the Court construes the Complaint as attempting to raise a hostile work environment claim pursuant to Title VII or the ADEA.

To plead that she was subjected to a hostile work environment in violation of Title VII or the ADEA, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (setting forth pleading standard for hostile work environment claim under Title VII); *see also Kassner*, 496 F.3d at 240 (setting forth same pleading standard for hostile work environment claims under ADEA).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the

victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).

Here, any hostile work environment claim fails because Plaintiff includes almost no detail as to her environment apart from the sexually-explicit statement repeated by her HR representative and that unnamed employees would follow her around the store.

### III. Conclusion

For the reasons stated above, the Complaint is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff is granted leave to file an amended complaint thirty (30) days from the date of this Memorandum and Order. Plaintiff is advised that if she files an amended complaint, it will completely replace the original Complaint. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: January 4, 2016
       Brooklyn, New York