UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

NICOLE JONES,

                        Plaintiff,

        v.

TARGET CORPORATION,

                        Defendant.

**MEMORANDUM & ORDER**
15-CV-4672 (MKB) (LB)

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Nicole Jones, proceeding *pro se*, commenced the above-captioned action on

August 7, 2015, against Defendant Target Corporation ("Target"), asserting claims under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), the Age

Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"). (Compl.

Docket Entry No. 1.)[1]  Plaintiff filed an Amended Complaint on March 4, 2016, alleging that

Defendant, her former employer, (1) discriminated against her based on her sex and age by

failing to promote her, reducing her compensation and terminating her employment, (2)

subjected her to a hostile work environment, and (3) retaliated against her by terminating her

employment after she complained about workplace conduct.[2]  (*See generally* Am. Compl.,

---

       [1]  By Memorandum and Order dated January 4, 2016, the Court dismissed the Complaint for failure to state a claim, and granted Plaintiff leave to file an amended complaint. *Jones v. Target Corp.*, No. 15-CV-4672, 2016 WL 50779 (E.D.N.Y. Jan. 4, 2016).

       [2]  In the Amended Complaint, Plaintiff also asserted a claim pursuant to the Americans with Disabilities Act of 1990 ("ADA"), but by letter dated July 22, 2016, Plaintiff withdrew her ADA claim.  (Pl. Letter dated July 22, 2016, Docket Entry No. 16.)

Docket Entry No. 6.)

Defendant moved for summary judgment on March 13, 2017. (Def. Mot. for Summ. J. ("Def. Mot."), Docket Entry No. 35; Def. Statement of Material Facts Pursuant to Local R. 56.1 ("Def. 56.1"), Docket Entry No. 35-1; Def. Mem. in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 35-2; Decl. of Scott Rabe ("Rabe Decl."), Docket Entry No. 35-3.) By order dated October 10, 2017, the Court referred Defendant's motion to Magistrate Judge Lois Bloom for a report and recommendation. (Order dated Oct. 10, 2017.)

By report and recommendation dated February 8, 2018 ("R&R"), Judge Bloom recommended that the Court grant Defendant's motion for summary judgment. (*See generally* R&R, Docket Entry No. 49.) Plaintiff filed objections to the R&R on February 22, 2018. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 50.) Defendant filed a response on March 5, 2018. (Def. Reply to Pl. Obj. ("Def. Reply"), Docket Entry No. 51.) Plaintiff filed further objections on March 13, 2018. (Pl. Letter dated Feb. 12, 2018, Docket Entry No. 52.)

For the reasons set forth below, the Court adopts the R&R in its entirety and grants Defendant's motion for summary judgment.

## I. Background

The Court assumes familiarity with the underlying facts as detailed in the R&R and provides only a summary of the pertinent facts and procedural background.

### a. Factual background

The following facts are undisputed unless otherwise noted. In 2007, Plaintiff was hired to work as a "Logistics Flow Team Member" at the Target store located at 2900 Veterans Road West, Staten Island, New York. (Def. 56.1 ¶¶ 1–4.) Plaintiff worked the overnight shift, where her responsibilities included assisting with unloading boxes of merchandise from delivery trucks,

moving the boxes by pallet to the appropriate area in the store, and shelving the items. (Pl. Am. Aff. in Opp'n to Def. Mot. ("Pl. Aff.") ¶ 6, Docket Entry No. 43; Def. 56.1 ¶ 6.) When Plaintiff returned to work from medical leave in 2012, J'Amonte White was one of the "Team Leaders"[3] who supervised Plaintiff. (Pl. Aff. ¶ 3.)

### i. Claims of White's inappropriate conduct

Plaintiff claims that, beginning "[a]round summer of 2012," White "began to sexually harass [her]." (*Id.* ¶ 8.) According to Plaintiff, White assigned her to work in a separate section of the store from the rest of her team members, and sometimes whispered to her in ways that made her feel uncomfortable. (*Id.* ¶¶ 10–11; Pl. Dep. 155:15–156:6, annexed to Rabe Decl. as Ex. 1.) Among other conduct, Plaintiff claims that White used a "boom box" to play music with "vulgar, sexist" lyrics Plaintiff found offensive. (Pl. Aff. ¶¶ 18–28.) Plaintiff asserts that on one occasion, as the radio played while a group of team members unloaded merchandise from a delivery truck,[4] White "told [her] to 'dance' for him," and said, "in sum and substance, 'You do the same, old two-step every day,'" which Plaintiff understood to mean "that [she] should dance more suggestively for [White's] entertainment and gratification." (*Id.* ¶ 13.) According to Plaintiff, she told White, "[n]o I'm here to work, I'm not here to dance for you," (*id.* ¶ 14), to which White responded that he was going to "run [her] out of Target," (*id.* ¶ 15; Pl. Dep. 37:2–

---

[3] In Target's organizational hierarchy, entry-level employees are referred to as "Team Members," who report to supervising "Team Leaders," who in turn report to "Executive Team Leaders" who are "responsible for a specific area of the store operations." (Def. Statement of Material Facts Pursuant to Local R. 56.1 ("Def. 56.1") ¶ 2, Docket Entry No. 35-1.)

[4] Plaintiff testified at her deposition that the music played from the radio while team members unloaded delivery trucks "was not [White's] personal music" and therefore not the vulgar and offensive music he played on other occasions. (Pl. Dep. 158:7–16, annexed to Rabe Decl. as Ex. 1.)

24).  Plaintiff claims that she complained to Lou Vigliotti, Executive Team Leader for Human Resources, about White's comment and his conduct.[5]  (Pl. Aff. ¶ 29.)  According to Plaintiff, Vigliotti "responded to [her], in essence, 'I don't think he's after your job.'"  (*Id.* ¶ 30.)  Vigliotti also told Plaintiff that she needed to "make all of [her] complaints" at that time, and "could not bring additional complaints up later" just because she was "angry."  (*Id.* ¶ 31.)  Vigliotti then told Plaintiff, "[i]f [White] needs to pull you into the office for something,"[6] a statement that Plaintiff "did not fully understand" but that she claims "made [her] feel threatened and uncomfortable."[7]  (*Id.* ¶¶ 31–32.)

### ii. Disciplinary action against Plaintiff

Beginning in July of 2012, Plaintiff's supervisors gave her a number of informal verbal "coachings" to address unsatisfactory work performance, and written "counselings" pursuant to Target's formal "Counseling and Corrective Action" policy for addressing unsatisfactory performance.  (Def. 56.1 ¶¶ 42–67; Decl. of Lou Vigliotti ("Vigliotti Decl.") ¶¶ 30–53, Docket Entry No. 35-6.)  White gave Plaintiff several coachings for failure to complete work in a timely or satisfactory manner, and for arriving to work late.  (Def. 56.1 ¶¶ 46–47, 64–66.)  Team Leaders and Executive Team Leaders, including Shadiqua Pride, a Team Leader, and Vigliotti,

---

[5] Defendant disputes that Plaintiff's complaint to Vigliotti made reference to the sexually vulgar and offensive music, and argues that it is "unsupported by the record to which Plaintiff cites, and it is inconsistent with her deposition testimony."  (Def. Suppl. Reply Mem. in Supp. of Def. Mot. ("Def. Suppl. Reply") 5 n.2, Docket Entry No. 48.)

[6] Plaintiff does not provide the full alleged statement made by Vigliotti other than the portion quoted by the Court.

[7] Plaintiff also claims that White engaged in other inappropriate conduct, including inappropriately "lean[ing] up against" her while pushing boxes, (Pl. Aff. ¶ 71), and holding up a pair of men's underwear in the presence of Plaintiff and other employees, and said "What man would wear this? and "This is gay," (*id.* ¶ 69; *see also* Pl. Dep. 127:19–129:21).

also gave Plaintiff coachings and written counselings for similar issues. (*Id.* ¶¶ 48–49, 52, 54–56, 59–63.) Plaintiff asserts that many of these disciplinary interventions were the result of White's decision to "assign[] [her] disproportionately heavy, physical labor to retaliate against [her]," (Pl. Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 46, Docket Entry No. 44; *see also* Pl. Dep. 107:20–108:21), after she complained to Vigliotti about him, (Pl. Aff. ¶¶ 45, 47, 52–53, 59–60, 62–66, 69–71). Plaintiff also disputes the characterization of some of these conversations as coachings due to poor performance. (*Id.* ¶ 48.) However, Plaintiff concedes that she arrived late to work on several occasions, (*see, e.g.,* Def. 56.1 ¶¶ 49, 61; Pl. 56.1 ¶¶ 49, 61), but asserts that Defendant unfairly penalizes employees for lateness although they regularly stay longer than their scheduled shifts, (Pl. Dep. 178:16–22). Plaintiff continued to receive coachings and written counselings on a periodic basis until October of 2013. (Vigliotti Decl. ¶¶ 30–53.)

### iii. Subsequent complaints and the events leading to the termination of Plaintiff's employment

On January 24, 2014, Plaintiff called Target's "Integrity Hotline" to make a complaint that White assigned her the task of moving thirty-pound bags of dog food, despite the fact that White's assignments had caused her health to "deteriorate[] to such an extent that [she] felt physically near death." (Pl. Aff. ¶ 83.) "Either the same day that [she] called the [I]ntegrity [H]otline — January 24, 2014 — or within a couple of days of January 24, [she] sat down with Mr. Vigliotti and a woman name[d] Tiersen . . . to again make a formal complaint about Mr. White's harassment and retaliation."[8] (*Id.* ¶ 84.) According to Plaintiff, Vigliotti and Tiersen

---

[8] Defendant claims that both Plaintiff's call to the Integrity Hotline and meeting with Target personnel did not occur until after the incident leading to the termination of Plaintiff's employment. (*See* Def. 56.1 Counterstatement to Pl. Aff. ("Def. Counterstatement") ¶¶ 85–87, Docket Entry No. 48-1.)

informed her that her allegations were "serious."  (*Id.*; *see also* Pl. Dep. 46:16–25.)

Defendant asserts that on January 27, 2014, White and Pride informed Vigliotti that a package containing marijuana was found on the floor in the employee locker room.  (Def. 56.1 ¶ 101.)  According to Vigliotti, White and Pride were "unaware of the package's origin or owner." (Vigliotti Decl. ¶ 66.)  At some point that day, Vigliotti and Scott Weise, Executive Team Leader for Target's Asset Protection unit, reviewed the surveillance video and concluded that at approximately 12:51 AM, Plaintiff, while on break, dropped what they determined to be a bag of marijuana while putting items into a locker.  (*Id.* ¶ 103.)  According to Vigliotti, he and Weise met with Plaintiff at some point "later in the day" and reviewed a portion of the video with her. (*Id.* ¶ 69.)  Defendant claims that during the meeting, Plaintiff admitted to being the individual in the video that Vigliotti and Weise determined had dropped the bag of marijuana.  (*Id.*)  Plaintiff admits that at some unspecified time, Vigliotti showed her a "screenshot" of the surveillance footage, which showed an individual that she confirmed to be her, "standing next to the locker with a blur . . . near [her] leg or [her] knee."[9]  (Pl. Dep. 136:16–137:16.)

According to Defendant, Plaintiff called the Integrity Hotline on January 27, 2014 at 4:18 PM, complaining that White had "assigned her to pull a water palate [sic] and heavy inventory to the sales floor," had "threatened to assign her to work on the inventory truck," and "on January 26, 2014 . . . laughed at Plaintiff and said 'Oh, you can't work here anymore.'"  (Decl. of Heather Simonett ("Simonett Decl.") ¶ 4, Docket Entry No. 35-7; *see also* Suppl. Decl. of Heather Simonett ("Simonett Suppl. Decl.") ¶ 3 (correcting prior error reporting time of call as 4:18 AM), Docket Entry No. 48-2.)  Defendant asserts that Heather Simonett, the employee

---

[9]  At some unspecified time, Plaintiff was also shown the full surveillance video.  (Pl. Dep. 204:15–23.)

relations representative who received the call, informed Vigliotti of the complaint on January 28, 2014 at 5:05 AM.[10]  (Simonett Decl. ¶ 6.)

On February 7, 2014, Defendant terminated Plaintiff's employment[11] for violating Target's "Drug-Free Workplace" policy.[12]  (Vigliotti Dep. ¶ 9.)  Plaintiff claims that the surveillance video does not show that she dropped a bag of marijuana, (Pl. Dep. 202:13–19), and that Target's reason for terminating her employment "is pretext for sex discrimination and retaliation for making a formal complaint on or about January 24, 2014," (Pl. Aff. at ¶ 87).

### b. Judge Bloom's recommendation

Judge Bloom recommended that the Court grant Defendant's motion for summary judgment.[13]  (*See generally* R&R.)  Addressing Plaintiff's sex discrimination claims under Title

---

[10]  Plaintiff asserts that, while she "cannot now remember the dates," she also called Target's Integrity Hotline on multiple occasions after the incident leading to her termination, to inquire about the status of Target's investigation.  (Pl. Aff. ¶ 98.)

[11]  While Plaintiff does not dispute that Defendant terminated her employment on February 7, 2014, (*see* Pl. 56.1 ¶ 7), her affirmation in opposition to Defendant's motion lists her date of termination as February 5, 2014, (Pl. Aff. ¶ 2).

[12]  Target's Drug-Free Workplace policy provides that the "use, consumption, or possession of non-prescribed mood-altering, legal or illegal chemicals or drugs," constitute "grounds for corrective action, up to and including termination, if performed during working hours (including breaks and overtime) on company premises . . . ."  (Decl. of Lou Vigliotti ("Vigliotti Decl.") ¶ 11, Docket Entry No. 35-6.)  During her deposition, Plaintiff testified that she was aware of and understood the policy.  (Pl. Dep. 120:4–123:1.)

[13]  Judge Bloom found that Plaintiff had abandoned her ADEA discrimination claim by failing to respond to Defendant's arguments, and that, even assuming she had not abandoned this claim, Plaintiff "fail[ed] to demonstrate that her age was the 'but for cause' of any adverse employment action alleged."  (R&R 10 n.15 (citing *Delay v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014))); *see also Varno v. Canfield*, 664 F. App'x 63, 65 (2d Cir. 2016) ("Unlike Title VII claims, ADEA claims require that age be the 'but-for' cause of the employer's adverse decision." (internal quotation marks omitted) (first quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176–77 (2009); and then citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105–06 (2d Cir. 2010))).

VII, Judge Bloom found that Plaintiff has not established a prima facie case to support her discrimination claims for failure to promote, reduction in compensation, and termination. (*Id.* at 8–16.) First, as to the failure to promote claim, Judge Bloom concluded that because Plaintiff conceded that she never applied for a promotion, she has no claim. (*Id.* at 10–11.) Second, Judge Bloom concluded that Plaintiff's reduced compensation claim was abandoned due to Plaintiff's failure to present this argument in her submissions, was time-barred, and, in any event, failed on the merits. (*Id.* at 11–12.) Third, Judge Bloom found that, while Plaintiff's allegations regarding the termination of her employment are relevant to her retaliation claim, Plaintiff "allege[d] no facts to support an inference of gender or age *discrimination* regarding her termination from Target."[14] (*Id.* at 13 (emphasis added).) Judge Bloom further concluded that, even assuming such allegations were in fact relevant to her discrimination claims and sufficient to make out a prima facie case of discrimination, Plaintiff has failed to show that Defendant's decision to fire her for violating its Drug-Free Workplace policy was pretext. (*Id.* at 14–16.)

Judge Bloom also concluded that Plaintiff failed to establish retaliation claims under Title VII and the ADEA. (*Id.* at 16–23.) As to her age retaliation claim, Judge Bloom found the allegations related to age discrimination insufficient to establish Plaintiff's complaints as protected activity under the ADEA. (*Id.* at 19 n.21.) With respect to Plaintiff's Title VII retaliation claim, Judge Bloom concluded that, even assuming Plaintiff's complaints were protected activity under Title VII, there is no evidence to support a causal link between such

---

[14] Judge Bloom also found that, to the extent Plaintiff's discrimination claims rested on her assertions that she was assigned more difficult tasks, such assignments do not amount to adverse employment actions because they were "not materially adverse changes in the terms and conditions of [P]laintiff's employment," and were not beyond the scope of Plaintiff's duties. (R&R 13 n.17 (citing cases).)

protected activity and Plaintiff's termination.  (*Id.* at 16–22.)

Finally, Judge Bloom found that Plaintiff has not satisfied her burden of establishing a prima facie case of a hostile work environment under Title VII.[15]  (*Id.* at 23–29.)  Judge Bloom found that Plaintiff's allegations are not adequate to support an inference that she was subject to inappropriate workplace conduct because of her sex, and even assuming they are adequate, are not sufficiently severe or pervasive.  (*Id.*)

## II.  Discussion

### a.  Standards of review

#### i.  Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).  The clear error standard also applies when a party makes only conclusory or general objections.  *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court"

---

[15]  Judge Bloom also concluded that, as with Plaintiff's ADEA discrimination claim, Plaintiff abandoned her ADEA hostile work environment claim by failing to respond to the arguments raised in Defendant's motion, and, even assuming Plaintiff had not waived the claim, it failed on the merits.  (R&R 23 n.28.)

(citations omitted)); *see also* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b) . . . .").

### ii. Summary judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Unopposed recommendations

No party objected to Judge's Bloom's recommendation that the Court grant Defendant's motion to dismiss Plaintiff's discrimination, retaliation and hostile work environment claims

under the ADEA, and Plaintiff's hostile work environment claim under Title VII.[16]

The Court has reviewed the unopposed portions of the R&R and, finding no clear error, the Court adopts those recommendations pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the Court grants Defendant's motion as to Plaintiff's discrimination, retaliation and hostile work environment claims under the ADEA, and Plaintiff's hostile work environment claim under Title VII.

### c. Plaintiff's objections to the R&R

Plaintiff's objections consist of five factual assertions about the January 27, 2014 incident that led to her termination, as well as her complaints to the Target Integrity Hotline. (Pl. Obj.) First, Plaintiff asserts that "[t]he 'blur' on Defendant's surveillance video, to which the [R&R] refers, is not a bag of marijuana." (*Id.* ¶ 1.) Second, Plaintiff claims that "[m]inutes before [she] approached the open locker, the video shows that another person walks up to the wall of lockers . . . ." (*Id.* ¶ 2.) Third, Plaintiff asserts that "[t]he night I was fired, I asked Defendant to show me the surveillance that supposedly showed me dropping a bag of marijuana," but Defendant refused. (*Id.* ¶ 3.) Fourth, "[n]o one from Target showed me any surveillance video of the night I was fired until I challenged Defendant's denial of my unemployment insurance." (*Id.* ¶ 4.) Finally, Plaintiff states that she "called [the] Target Integrity Hotline before I got fired as well as numerous times following my termination," and "continued to call . . . until Target denied my unemployment insurance." (*Id.* ¶ 5.)

On March 13, 2018, the clerk of court received a letter from Plaintiff, dated February 12, 2018, which largely tracks her objections. (Pl. Letter dated Feb. 12, 2018.) In the letter, Plaintiff

---

[16] As discussed *infra*, the Court construes Plaintiff's submissions as objecting to Judge Bloom's recommendation that the Court grant Defendant's motion as to her Title VII discriminatory termination and retaliation claims.

states that she called the Integrity Hotline on January 24, 2014, and met with Vigliotti and Tiersen on the same day. (*Id.*) After two days off from work, Plaintiff states that on January 27, 2014 she returned to work and was "confronted with an unbelievable story," an apparent reference to her alleged violation of the Drug-Free Workplace policy. (*Id.*) Plaintiff further asserts that "[t]he video in question clearly shows an individual approaching my open locker seconds before I returned from the restroom." (*Id.*) Finally, Plaintiff appears to challenge Vigliotti's general credibility, arguing that he has attested to conducting follow-up inquiries regarding conduct that Plaintiff never complained about. (*Id.*)

Construing Plaintiff's objections to "raise the strongest arguments they suggest," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (citation omitted), the Court understands Plaintiff to object to Judge Bloom's recommendations that the Court grant Defendant's motion as to her discriminatory termination[17] and retaliation claims under Title VII.

### i. Title VII discrimination claim

In asserting that "[t]he 'blur' on Defendant's surveillance video . . . is not a bag of marijuana," (*id.* ¶ 1), and that "[m]inutes before [she] approached the open locker, the video shows that another person walks up to the wall of lockers," (*id.* ¶ 2), the Court understands Plaintiff to be arguing that the surveillance video does not show that Plaintiff brought marijuana onto the premises, that she did not violate Defendant's Drug-Free Workplace policy, and that she has carried her prima facie burden of establishing that Defendant's termination of her employment constituted sex discrimination.

Title VII discrimination claims are analyzed under the three-stage, burden-shifting

---

[17] Because the incident that took place on January 27, 2014 has no bearing on Plaintiff's failure to promote and reduced compensation claims, the Court does not construe Plaintiff's submission to object to Judge Bloom's recommendation as to those claims.

framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015). To establish an employment discrimination claim, Title VII requires that "a plaintiff must first establish a *prima facie* case of discrimination by showing that: '(1) she is a member of a protected class; (2) he is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). A plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). If the plaintiff meets her burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *Vega*, 801 F.3d at 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 307, 311). If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that the defendant-employer's reason was pretext. *Id.* at 83; *Zann Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 845 (2d Cir. 2013) (citing *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)).

Plaintiff's assertions that the video surveillance does not show that she dropped the bag of marijuana does not satisfy her burden of establishing a prima facie case of discrimination. In the R&R, Judge Bloom did not find that Plaintiff failed to meet this burden because the video surveillance conclusively established that Plaintiff had violated the Drug-Free Workplace policy. Indeed, Judge Bloom stated that "there is no way for the Court to verify from the video that [Plaintiff] dropped marijuana to the floor." (R&R 5 n.10.) Rather, Judge Bloom found that Plaintiff failed to meet her prima facie burden because the allegations regarding her termination

did not "give rise to an inference of discrimination." (*Id.* at 12–13.) Judge Bloom concluded that Plaintiff had not tied these allegations to any of the allegedly discriminatory conduct.[18] (*See id.* at 12–13.) Based on Plaintiff's own statements that she was "terminated in retaliation for complaining about sexual harassment," (Pl. Aff. ¶ 2), the termination of her employment was not, in and of itself, an act of sex discrimination, but retaliation for her prior complaints,[19] (*see* R&R 13).

Consistent with Judge Bloom's finding, the Court finds that because Plaintiff has not tied her allegations regarding the events leading to her termination to her allegations of sex discrimination in order to establish a prima facie case, the Court grants summary judgment as to Defendant's Title VII discriminatory termination claim.

### ii. Title VII retaliation claim

The Court understands Plaintiff's objections to also argue that because the video does not show that she brought marijuana onto the premises, she did not violate Defendant's Drug-Free Workplace policy, and therefore, Defendant's termination of her employment was motivated by retaliation for her complaints about White's behavior toward her and summary judgment as to

---

[18] Judge Bloom concluded that while Plaintiff alleged that "White treated her 'in a shocking and discriminatory way,'" Plaintiff "allege[d] no facts to support an inference of gender . . . discrimination regarding her *termination* from Target," because, even assuming White's conduct was discriminatory, Plaintiff failed to "show any connection" between White's conduct and her termination. (R&R 13 (quoting *Bernadotte v. New York Hops. Med. Ctr. Of Queens*, No. 13-CV-965, 2016 WL 792399, at *9 (E.D.N.Y. Feb. 26, 2016)).) Judge Bloom therefore analyzed Plaintiff's allegations regarding White's conduct separately as part of Plaintiff's hostile work environment claim, and analyzed Plaintiff's alleged complaints regarding such conduct as part of her retaliation claim. (*Id.* at 16–22.)

[19] Moreover, as Judge Bloom found, and as discussed *infra*, even assuming Plaintiff has carried her burden at the prima facie stage, she has failed to show that Defendant's reason for terminating her employment — the violation of Target's Drug-Free Workplace policy — was mere pretext. (R&R 14–16.)

this claim is inappropriate. The Court also understands Plaintiff's statements that she "called [the] Target Integrity Hotline before [she] got fired as well as numerous times following [her] termination," (*id.* ¶ 5), to further support her claim that she was terminated for engaging in protected activity.

Title VII prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-(3)(a). Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework outlined above. *Littlejohn*, 795 F.3d at 315 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)) (discussing burden-shifting); *St. Mary's Honor Ctr.*, 509 U.S. at 506 (citing *Tex. Dep't of Cty. Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981)). Under that framework, a plaintiff must first establish a prima facie case of retaliation. *St. Mary's Honor Ctr.*, 509 U.S. at 506; *Campbell v. N.Y.C. Transit Auth.*, 662 F. App'x 57, 59 (2d Cir. 2016); *Kirkland v. Cablevision Sys.*, 760 F. 3d 223, 225 (2d Cir. 2014). To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). A plaintiff's burden at this stage is "minimal." *Holcomb*, 521 F.3d at 139 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 506).

A plaintiff asserting a Title VII retaliation claim must show that participation in the protected activity was the "but for" cause of the adverse employment action. *Vega*, 801 F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). But-for causation does not require that retaliation "was the only cause of the employer's action, but only that the

adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at

91 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)); *Pothen v. Stony*

*Brook Univ.*, 211 F. Supp. 3d 486, 497 (E.D.N.Y. 2016).

If a plaintiff meets her burden at the prima facie stage, a "temporary presumption" of

retaliation arises, and the burden shifts to the defendant employer to articulate a legitimate, non-

retaliatory reason for the challenged conduct. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d

at 307, 311). If the defendant-employer articulates such a reason, the burden shifts back to the

plaintiff-employee to show that the defendant-employer's reason was pretext. *Id.* at 83.

To show pretext, a plaintiff must "present evidence from which a fact-finder could

reasonably conclude that the [defendant's] reason was pretextual and that the real reason was

discrimination." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 317 (2d Cir. 1999)

(citing *St. Mary's Honor Ctr.*, 509 U.S. at 507–08). An employer's "explanation of its reasons

must be clear and specific" in order to "afford the employee a full and fair opportunity to

demonstrate pretext." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir.

2001) (citation omitted). Evaluating whether the defendant's nondiscriminatory reason is a

pretext involves "factual questions such as whether the asserted reason for the challenged action

comports with the defendant's policies and rules, whether the rule applied to the plaintiff has

been applied uniformly, and whether the putative non-discriminatory purpose was stated only

after the allegation of discrimination." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 171 (2d

Cir. 1993) (collecting cases); *Xu-Shen Zhou v. State Univ. of N.Y. Inst. of Tech.*, 499 F. App'x

105, 109 (2d Cir. 2012) (quoting *DeMarco*, 4 F.3d at 171). However, when making this

assessment, courts "are decidedly not interested in the truth of the allegations against [the]

plaintiff" but rather "are interested in what motivated the employer." *Mathew v. N. Shore-Long*

*Island Jewish Health Sys., Inc.*, 582 F. App'x 70, 71 (2d Cir. 2014) (quoting *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006)); *see also Graham v. Long Island R.R.*, 230 F.3d 34, 44 (2d Cir. 2000) (holding that the plaintiff could not establish pretext by demonstrating that the results of a failed drug test were not "actually correct" because "[t]he key question is whether it was reasonable for the employer to rely on the test result in making its employment decision"); *Hartley v. Rubio*, 785 F. Supp. 2d 165, 177 (S.D.N.Y. 2011) ("In determining whether the articulated reason for the action is a pretext, 'a fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable. Rather, the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action.'" (quoting *DeMarco*, 4 F.3d at 170–71)).

For purposes of Defendant's motion, the Court assumes that Plaintiff has carried her burden of showing prima facie retaliation.[20]  *See Sattar v. Johnson*, 129 F. Supp. 3d 123, 138 (S.D.N.Y. 2015) (finding that "Second Circuit case law makes clear that the court may simply assume that the plaintiff has established a prima facie case and skip to the final step in the *McDonnell Douglas* analysis, as long as the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action" (citing cases)), *aff'd sub nom.*, *Sattar v. United States Dep't of Homeland Sec.*, 669 F. App'x 1 (2d Cir. 2016).  However, Defendant has presented a legitimate, non-retaliatory reason for terminating Plaintiff's employment — her violation of its Drug-Free Workplace policy — and Plaintiff has failed to

---

[20]  Judge Bloom assumed that Plaintiff's complaints to Vigliotti constituted protected activity, but found that Plaintiff has failed to establish a causal link between such protected activity and the termination of her employment, thereby failing to make out a prima facie case of retaliation.  (R&R 20–22.)

show that this reason is pretext.

Plaintiff does not dispute that the decision to terminate her employment was not made by White, but asserts that White falsely accused her of bringing marijuana to work in retaliation for complaining about his conduct.[21] (Pl. Aff. ¶¶ 96–97.) The Court therefore understands Plaintiff to assert a "cat's paw" theory of liability against Defendant. Under this theory, an employer may be held liable for unlawful retaliation because of an "employee who 'manipulates' an employer into acting as mere 'conduit' for his retaliatory intent." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 273 (2d Cir. 2016); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) (holding that an employer may be held liable for discrimination based on the discriminatory animus of an employee other than the ultimate decisionmaker who intended, and succeeded, by his or her conduct, to proximately cause the adverse action). The plaintiff in *Vasquez* alleged that her employer's decision to terminate her was based on false accusations that she engaged in sexual harassment, accusations that were made by the same co-worker whom the plaintiff had complained was sexually harassing *her*. *Vasquez*, 835 F.3d at 269–71. The district court dismissed the plaintiff's retaliation claim, "holding that Vasquez's employer could not have engaged in retaliation because it could not be held responsible for the retaliatory animus of Vasquez's co-worker, a low-level employee with no decisionmaking authority." *Id.* at 267. The Second Circuit vacated, holding that Title VII liability can attach "when, through its own negligence, the employer gives effect to the retaliatory intent of one of its — even low-level — employees." *Id.* at 273–74. In sanctioning cat's paw liability, the Second Circuit observed that imputing the co-worker's retaliatory animus to the employer "accord[ed] with longstanding

---

[21] As noted *supra*, Defendant maintains that when Pride and White informed Vigliotti of the marijuana they discovered, "they were unaware of the package's origin or owner." (Vigliotti ¶ 66.)

precedent" that a plaintiff can support a Title VII retaliation claim by showing that "the individual shown to have the impermissible bias played a meaningful role in the [decisionmaking] process." *Id.* at 272 (alteration in original) (internal quotation marks omitted) (quoting *Holcomb*, 521 F.3d at 143). The Second Circuit, however, "emphasize[d] that such an approach should not be construed as holding an employer 'liable simply because it acts on information provided by a biased co-worker.'" *Id.* at 275 (quoting *Vasquez v. Empress Ambulance Serv., Inc.*, No. 14 CV-8387, 2015 WL 5037055, at *6 (S.D.N.Y. Aug. 26, 2015)). The Second Circuit cautioned that:

> Only when an employer in effect adopts an employee's unlawful animus by acting *negligently* with respect to the information provided by the employee, and thereby affords that biased employee an outsize role in its own employment decision, can the employee's motivation be imputed to the employer and used to support a claim under Title VII.

*Id.*

Here, Plaintiff's allegation that White falsely accused her of violating Target's Drug-Free Workplace policy, without more, is insufficient to sustain her claim. Plaintiff does not dispute Defendant's assertion that once White and Pride reported that they found the bag of marijuana in the employee locker room, Vigliotti and Wiese conducted an investigation by reviewing the surveillance footage, and made an independent determination that the bag fell from Plaintiff's person. (Def. 56.1 ¶ 102; *see also* Vigliotti Dep. ¶¶ 66–68.) Plaintiff has failed to provide evidence that Vigliotti and Wiese "blindly credited" any assertions from White, *Vasquez*, 835 F.3d at 276, or otherwise acted negligently in a way that gave White an "outsize role" in the decision to terminate her employment, *id.* at 275. While White and Pride recovered the drugs, there is no evidence that White ever attributed it to Plaintiff, or that he had any role in the investigation that followed. In the absence of any such evidence, Plaintiff's retaliation claim

cannot withstand summary judgment.[22]  *Id.* at 276–77; *see also Prophete-Camille v. Stericycle, Inc.*, No. 14-CV-7268, 2017 WL 570769, at *14 (E.D.N.Y. Feb. 13, 2017) ("Even assuming, *arguendo*, that [the] request for [p]laintiff's removal was based on biased information provided by [the biased employee], the record does not contain any facts that would indicate [that the employer's decisionmakers] acted negligently in terminating [p]laintiff . . . . ." (citing *Vasquez*, 835 F.3d at 275)); *see also Boston v. Taconic Eastchester Mgmt. LLC*, No. 12-CV-4077, 2016 WL 5719751, at *6 (S.D.N.Y. Sept. 30, 2016) (dismissing discrimination claim where "[e]ven assuming [the biased employee] harbored discriminatory animus towards [p]laintiff . . . [p]laintiff is unable to show that [the employer] negligently relied on [the biased employee's] statements").

Plaintiff does not assert that Defendant was negligent in relying on White's purported false accusations.  Instead, as noted above, Plaintiff objects to the conclusion that she violated the Drug-Free Workplace policy.  (Pl. Obj. ¶¶ 1–2.)  However, Plaintiff's challenge to the surveillance footage does not establish pretext.  While Plaintiff may dispute the investigation's finding that she dropped the bag of marijuana in the locker room, whether she ultimately did or did not is not dispositive of the pretext inquiry.[23]  Rather than disagree with Defendant's

---

[22]  Moreover, Plaintiff has not challenged Defendant's assertion that the Drug-Free Workplace policy is applied even-handedly to Target employees.  *See* Vigliotti Decl. ¶ 84 (discussing Target's termination of two male employees for violating the policy); *see also DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 171 (2d Cir. 1993) ("The pretext inquiry thus normally focuses upon factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules, whether the rule applied to the plaintiff has been applied uniformly, and whether the putative non-discriminatory purpose was stated only after the allegation of discrimination." (collecting cases)).

[23]  The Court has reviewed the surveillance video and agrees with Judge Bloom's conclusion that although difficult to confirm, it appears that something falls from Plaintiff's person to the floor at approximately the 12:52.21 mark.  (R&R 5 n.10.)  Moreover, while other

conclusion, Plaintiff must offer evidence suggesting that Defendant's reliance on this conclusion was unreasonable. *See Graham*, 230 F.3d at 44 ("To sustain its employment decision, the [defendant] need not show that the result of the drug test was actually correct, but only that it reasonably relied on the [drug] test result. Even assuming a jury were later to find that the laboratory's drug test was either improperly administered or inaccurate does not change the correctness of the district court's conclusion."); *see also Babcock v. New York State Office of Mental Health*, No. 04-CV-2261, 2009 WL 1598796, at *15 (S.D.N.Y. June 8, 2009) (citing cases); *Ascione v. Pfizer, Inc.*, 312 F. Supp. 2d 572, 578 (S.D.N.Y. 2004) ("As long as [the employer] terminated [the plaintiff] because it reasonably *believed* she overstated her overtime records (as opposed to because of a discriminatory reason), and produces some evidence forming the grounds for that belief, [the employer's] motion must be granted." (first citing *Mohamed v. Marriott Int'l, Inc.*, 905 F. Supp. 141, 155 (S.D.N.Y. 1995); and then citing *Graham*, 230 F.3d at 44)), *aff'd*, 138 F. App'x 347 (2d Cir. 2005).

Plaintiff has not presented evidence suggesting that Defendant negligently relied on any accusations made by White. Moreover, Plaintiff has not shown that Defendant's reliance on the conclusion of its investigation was unreasonable, or offered any other basis to challenge its reason for the termination of her employment. Thus, Plaintiff has failed to establish pretext, and the Court therefore grants Defendant's motion for summary judgment as to Plaintiff's Title VII retaliation claim.[24]

---

employees walk through the hallway throughout the duration of the video, Plaintiff appears to be one of the few employees who stand almost directly over the space where the package was ultimately found. (*See* Video Ex., annexed to Pl. Aff.)

[24] Plaintiff also asserts in her objections that, the night Defendant terminated her employment, Defendant refused to show her the surveillance video, and did not do so until she

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment as to all of Plaintiff's claims and dismisses the Amended Complaint in its entirety. The Clerk of Court is directed to close this case.

SO ORDERED:

                                           s/ MKB            
MARGO K. BRODIE
United States District Judge

Dated: March 16, 2018
         Brooklyn, New York

---

challenged Defendant's denial of unemployment insurance benefits. (Pl. Obj. ¶¶ 3–4.) However, assuming the truth of these statements, Plaintiff provides no basis for concluding that Defendant was required to show her the surveillance video earlier than she claims they did, or why this information supports her claims.